IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FRANK JOSEPH WRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 23-0383-MU |
| ) | |
| LELAND DUDEK, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Frank Joseph Wright brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI"), based on disability, under Title XVI of the Act. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 5 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 6. Upon consideration of the administrative record, Wright's brief, the Commissioner's brief, and oral argument presented at the February

27, 2024 hearing before the undersigned Magistrate Judge, the Court determines that the Commissioner's decision denying benefits should be affirmed.[1]

## I. PROCEDURAL HISTORY

Wright applied for a period of disability and DIB, under Title II of the Act, 42 U.S.C. §§ 423-425, and for SSI, based on disability, under Title XVI of the Act, 42 U.S.C. §§ 1381-1383d, on August 19, 2021, alleging disability beginning on October 19, 2017. (PageID. 314-15). He later amended his alleged onset date at his first hearing to May 1, 2021. (PageID. 75). His application was denied at the initial level of administrative review on December 15, 2021 and, upon reconsideration, on May 5, 2022. (PageID. 111-140). On May 5, 2022, Wright requested a hearing by an Administrative Law Judge (ALJ). (PageID. 183-84). On November 10, 2022, Wright appeared at a hearing before ALJ Ben Sheely and, on April 6, 2023. He appeared at another hearing before ALJ Sheely. (PageID. 73-80; 56-72). On April 13, 2019, the ALJ issued an unfavorable decision finding that Wright was not under a disability during the applicable time period. (PageID. 28-48). Wright appealed the ALJ's decision to the Appeals Council, and, on September 15, 2023, the Appeals Council denied his request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (PageID. 22-28).

After exhausting his administrative remedies, Wright sought judicial review in this Court, pursuant to 42 U.S.C. § 405(g). (Doc. 1). The Commissioner filed the social

---

[1] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. *See* Doc. 5. ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

security transcript on December 11, 2023. (Doc. 8). Both parties filed briefs setting forth their respective positions. (Docs. 9, 10). Oral argument was held before the undersigned Magistrate Judge on February 27, 2024. (Doc. 14).

## II.  CLAIM ON APPEAL

On appeal, Wright claims that the ALJ erred by failing to properly consider his use of an assistive device and, therefore, the ALJ's residual functional capacity (RFC) determination was not supported by substantial evidence. (Doc. 9 at p. 2; PageID. 726).

## III. BACKGROUND FACTS

Wright, whose date of birth is December 3, 1967, was 53 years old at the time of onset and 55 years old on the date of his hearing before the ALJ. (PageID. 60, 314). Wright initially alleged disability, commencing on May 1, 2021, due to heart disease, degenerative disc disease and herniated disc, bipolar 1, high blood pressure, depression, and diabetes. (PageID. 355). The date he was last insured was December 31, 2022. (PageID. 33). Wright earned his GED in May of 1988 and completed CDL truck driving school in May of 1991. (PageID. 356). He has worked as a truck driver and warehouse worker, but stopped working in October of 2017, due to his health conditions. (PageID. 355-56). He lives with his mother in her home. (PageID. 61). According to the Function Report that was completed on Wright's behalf on October 27, 2021, on a typical day, he takes his medication, takes care of his personal hygiene, prepares simple meals, like frozen dinners or canned soup, and watches television. (PageID. 374-76). He does the laundry and mows the yard; he goes outside once or twice a week; he can drive a car, but does not go out alone because of his blood sugar issue; he goes grocery shopping about once per month; he plays the guitar once or

twice a week for short periods; and he goes out to eat or to his daughter's house once or twice a month. (PageID. 375-78). At the hearing, he testified that he is unable to work because of his lifting restriction and because he has to change position regularly from sitting to standing and back every 20 minutes because of the pain in his right SI joint. (PageID. 62-63, 65). He testified that his pain averages a six daily. (*Id.*). He is also limited by his diabetes and heart disease, post triple bypass surgery in 2011. (PageID. 64). He testified that he started using a cane in spring or early summer of 2021 because his leg was giving out and he was losing balance. (PageID. 67).

## IV. ALJ'S DECISION

After conducting two hearings, the ALJ determined that Wright was not under a disability at any time from October 19, 2017, through the date of the decision, April 18, 2023, and thus, was not entitled to benefits. (PageID. 42). In his decision, the ALJ first determined that Wright's date last insured ("DLI") was December 31, 2022. (PageID. 33). He next began the process of applying the five-step sequential evaluation to Wright's claim. At step one, the ALJ found that Wright had not engaged in substantial gainful activity ("SGA") since October 19, 2017. (PageID. 34). Therefore, he proceeded to an evaluation of steps two and three. The ALJ found that Wright had the following severe impairments: lower back, diabetes, and obesity, but did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (PageID. 34-35). After considering the entire record, the ALJ concluded that Wright had the RFC to perform the full range of medium work. (PageID. 37-40). After setting forth his RFC, the ALJ determined that Wright was capable of performing past relevant work as a warehouse worker and a tractor truck driver. (PageID. 40-41). The

4

ALJ made an alternative finding that, in addition to his past relevant work, there were also other jobs that existed in significant numbers in the national economy that Wright could perform. (*Id.*). Accordingly, the ALJ found that Wright was not disabled within the meaning of the Act from October 19, 2017, through the date of the decision, which was April 18, 2023. (PageID. 42).

## V. DISCUSSION

Eligibility for DIB and SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 423(a)(1)(E),1382(a)(1)-(2). "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the [date last insured]." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past

5

>relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id.* When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

As noted above, Wright claims that the ALJ erred by rejecting medical evidence indicating that he needs to walk with a cane to prevent falls because his leg gives out

unpredictably and further erred by not including the limitations arising from his use of a cane in his RFC. Wright argues that the ALJ's RFC determination, therefore, was not supported by substantial evidence. (Doc. 9, PageID. 727-28).

A claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. It is an "administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. It represents the most, not the least, a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2. The RFC assessment is based on "all of the relevant medical **and other evidence**." 20 C.F.R. § 404.1545(a)(3). In assessing a claimant's RFC, the ALJ must consider only limitations and restrictions attributable to medically determinable impairments, i.e., those that are demonstrable by objective medical evidence. SSR 96-8p, 1996 WL 374184, at *2. Similarly, if the evidence does not show a limitation or restriction of a specific functional capacity, the ALJ should consider the claimant to have no limitation with respect to that functional capacity. Id. at *3.

It is well-settled that the ultimate responsibility for determining a claimant's RFC, in light of the evidence presented, is reserved to the ALJ, not to the claimant's physicians or other experts. *See* 20 C.F.R. § 404.1546. "[T]he ALJ will evaluate a [physician's] statement [concerning a claimant's capabilities] in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ."

*Green v. Soc. Sec. Admin.,* 223 F. App'x 915, 923 (11th Cir. 2007); *see also Pritchett v. Colvin*, Civ. A. No. 12-0768-M, 2013 WL 3894960, at *5 (S.D. Ala. July 29, 2013) (holding that "the ALJ is responsible for determining a claimant's RFC"). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Jones v. Colvin*, CA 14-00247-C, 2015 WL 5737156, at *23 (S.D. Ala. Sept. 30, 2015) (quoting *Ricks v. Astrue*, No. 3:10-cv-975-TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) (internal quotation marks and citations omitted)).

Wright specifically claims that the ALJ did not account for his need to use a cane or other assistive device to ambulate in the assigned RFC, which was assessed to be the full range of medium work. (Doc. 9). In the October 27, 2021 Function Report, which was completed on his behalf by Adrianne Jackson, she stated that, even though not "prescribed by a doctor," Wright uses a cane "when walking anywhere." (PageID. 379). At the hearing conducted by the ALJ on April 6, 2023, Wright testified that he started using a cane when walking in about the spring of 2021 because his leg was giving out causing him to lose balance. (PageID. 67).

A review of the medical records indicates that up until March of 2022, Wright presented to various medical providers without a cane or any other type of assistive device. However, on March 16 2022, he presented to the USA Neurosurgery Clinic reporting a history of low back pain that had progressively worsened since a motor vehicle accident in January of 2020 and at that time Wright described the pain as "a sharp, constant electrical shock-type pain that originates in his mid-line low back, shoots

8

across his bilateral hips, and radiates down his right leg to his knee." (PageID. 651). He endorsed numbness and tingling of his right buttock and thigh and increased gait imbalance with difficulty ambulating, "requiring him to adopt the use of a cane several months ago." (*Id.*). On physical exam, Dr. Ashley Kern noted that Wright had a limp or abnormal gait due to pain while walking with cane assistance. (*Id.*). Other abnormal findings on physical exam were mild lumbosacral spine tenderness to palpation, hip flexion was 4/5 on both right and left, and leg extension was 4/5 on both right and left." (PageID. 652). Dr. Kern assessed Wright with lumbar radiculopathy and referred him to 6 weeks of PT, prescribed medication for muscle spasms, and ordered an MRI of the lumbar spine. (PageID. 653). Dr. Kern did not prescribe an assistive device and did not comment on whether one was needed or recommended, but did note that Wright had an abnormal gait even with the use of a cane.

      Wright was again seen at the USA Neurosurgery Clinic on September 19, 2022 by Physician's Assistant Kathryn Convey, at which time he reported continued midline sharp low back pain radiating to the right leg. (PageID. 686). Wright further stated that he had difficulty standing or sitting in one position for more than a few minutes and told PA Convey that he had started using a cane about one year prior because of the sensation of his right leg collapsing occasionally when he walked. (*Id.*). He reported that his symptoms were causing difficulties with his activities of daily living, including driving. (*Id.*). Upon physical exam, PA Convey noted that his gait was intact with the use of a straight cane; he had pain with passive internal and external rotation of the right hip; and, while he had 5/5 muscle strength in the upper and lower extremities generally, he had 4/5 muscle strength with flexion and extension of his right hip, which caused

wincing and signs of pain. (PageID. 687). PA Convey referred Wright to orthopedics for further evaluation of his hip pain and referred him to pain management for possible right sacroiliac injections. (*Id.*). She did not prescribe an assistive device and did not comment on whether one was needed or recommended.

On September 1, 2022, Wright was seen by Dr. James R. Slauterbeck at USA Orthopaedics Surgery for an evaluation of right hip pain. (PageID. 677). X-rays taken on September 1, 2022 showed ankylosis of the inferior right SI joint. (PageID. 679). Wright reported a history of right hip and right low back pain that had been going on for several years. (PageID. 677). He stated that he had a hard time adducting his hip and abducting and separating his leg. (*Id.*). Wright reported that the limitation in movement and pain in the right hip limits his ability to walk, and Dr. Slauterbeck noted that Wright was using a walker at the time of this visit. (*Id.*). Dr. Slauterbeck's assessment was that Wright had some SI joint dysfunction on the right side. His plan was for Wright to take anti-inflammatories on a limited basis because of his diabetes, as well as physical therapy for range of motion, strengthening, and mobilization of his SI joint. He also recommended some chiropractic care for release of the SI joint. (*Id.*). Dr. Slauterbeck did not prescribe an assistive device and did not comment on whether one was needed or recommended.

On October 5, 2022, Wright was seen by Physician's Assistant Marcelo Gerjoi at the USA Neurosurgery Clinic at which time his chief complaint was chronic right hip pain. (PageID. 682). Significantly, physical examination showed that Wright had an antalgic gait when walking with a cane and restricted motion in the SI joint. (*Id.*). He had pain with external rotation in the SI joint and was tender to palpation in the right SI joint.

10

(*Id.*). Gerjoi noted that both he and the orthopedist assessed him with sacroiliac (SI) joint dysfunction with some evidence of bony ankylosis. (*Id.*). Gerjoi further stated:

> According to the patient this may be a litigated case or Worker's comp case. I advised the patient that they are more than welcome to request my records. With regard to work. The patient walks with a cane in order to not fall. His leg gives out unpredictably. I do not believe it would be safe to have the patient work a job with primary physical labor. He could have a job sitting as long as he had frequent breaks to get up.

(*Id.*). Gerjoi noted that Wright had been unable to go to physical therapy or the chiropractor as recommended by Dr. Slauterbeck due to lack of insurance. (*Id.*). Gerjoi recommended a diagnostic SI joint injection on the right and noted that he was at a standstill from a medical treatment standpoint due to lack of funds or insurance. (*Id.*).

Wright was seen by Dr. Clare Carney on December 8, 2022 for a consultative examination and disability evaluation. (PageID. 706). His chief complaint was constant pain in his lower back, worse on the right side and sometimes radiating down the right leg. (*Id.*). He reported that some days were better than others, but some days he needed a cane to walk with to keep his balance. (*Id.*). Dr. Carney noted that he did not bring the cane with him and only uses it occasionally. (*Id.*). His physical exam showed normal gait with an occasional limp, mild pain in the lower back when walking on heels, moderate pain in the lower back when squatting and rising, pain on rotation of the thoracic spine, decreased range of motion in the lumbar spine, pain in the lower back on hip rotation, supine leg raise positive on the right leg, and seated leg raise positive on the left leg. (PageID. 709-10). All other results were normal, including 5/5 strength throughout all extremities. (*Id.*). Dr. Carney diagnosed Wright with low back pain that would make it difficult for him to lift and carry heavy objects or walk long distances. (*Id.*).

Based upon her examination and her review and consideration of the medical evidence of record, Dr. Carney opined that an assistive device was not necessary for Wright's locomotion. (PageID. 711). She further opined that Wright would be able to perform the following work-related activities despite impairments: lifting and carrying lighter objects, sitting, standing, walking shorter distances, handling objects hearing, speaking, and traveling. (*Id.*).

Nurse Practitioner Tamekia Cunningham, who treated Wright for heart disease, high blood pressure, and diabetes, completed an application for disability access parking privileges on or about January 9, 2023, in which she stated, under penalty of perjury, that Wright could not walk two hundred feet without stopping to rest and could not walk without the use of, or assistance from, a brace, cane, crutch, another person, prosthetic device, wheelchair, or other assistive device. (PageID. 719). At a routine follow-up appointment on January 9, 2023, Nurse Practitioner Messie Squire noted that Wright was using a walking cane for ambulation due to sciatic pain with ambulation leading to weakness and falls. (PageID. 721).

The ALJ set forth in his decision the following regarding Wright's use of a cane while walking:

- "[The claimant] reported [at the hearing] that he started using a cane in 2021 because his leg began to give out." (PageID. 37).

- "The claimant presented to neurosurgeon, Ashley Kern, MD, in March 2022 for evaluation of low back pain. He endorsed radiation to the lower extremities. On exam, he ambulated with a cane he got for himself to assist with balance. There was mild tenderness to palpation in the lumbar spine. Motor strength was decreased (4/5) in the hips. Sensation and reflexes were intact." (PageID. 38).

- "In January 2023, the claimant presented to treatment for refills. He was using his own cane and complained of low back pain that radiated down the right lower extremity." (PageID. 38).

- "The claimant was noted to use a cane at some office visits, however, it was not prescribed and no provider noted it was medically necessary. The claimant presented to the in-person hearing without a cane and appeared to have normal ambulation. Tus [sic], the use of a cane is not included in the residual functional capacity. Despite his complaints, the claimant was found to have full strength in his extremities. He had some lumbar decreased range of motion. The residual functional capacity to medium work accommodates the claimant's severe impairments." (PageID. 39).

- Dr. Carney opined the claimant can lift and carry up to 20 pounds continuously and up to 50 pounds occasionally; he can sit for six hours at one time and in total; he can stand for one hour at one time for up to two hours; can walk for 45 minutes at one time for up to two hours; and he does not require a cane for ambulation. She opined he can occasionally climb ramps and stairs and balance and can never climb ladders, ropes and scaffolds." (PageID. 39).

After considering this evidence and concluding that no medical provider had prescribed a cane nor noted that one was medically necessary, the ALJ issued an RFC of the full range of medium work.

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. *See Chester*, 792 F.2d at 131. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. While the Court acknowledges that the ALJ did not specifically address PA Gerjoi's indication that he approved the use of a cane to prevent Wright from falling when his leg gives out unpredictably or CRNP Cunningham's statement in the handicapped parking decal application that Wright cannot walk without the use of an assistive device, the ALJ is not required to address every medical report specifically in his decision so long as he notes that he reviewed all record evidence, which he did here. Having reviewed the ALJ's

13

decision and the transcript and considered the arguments made by Wright, the Court finds that, even though there may be some contrary evidence concerning his use of and the medical necessity for a cane, the ALJ's RFC determination is supported by substantial evidence and based on proper legal standards. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

## **CONCLUSION**

Based on the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **26th** day of **March, 2025**.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**